**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Raymond T. Murphy</u>

    **v.**                                       Case No. 07-cv-145-PB
                                                               Opinion No. 2008 DNH 045

<u>John E. Potter, Postmaster General,
United States Postal Service</u>

<u>MEMORANDUM AND ORDER</u>

Raymond Murphy filed an administrative complaint of discrimination against his employer, the United States Postal Service ("Postal Service") in 1993.  The Postal Service agreed to a settlement resolving his complaint, but then allegedly failed to perform its end of the bargain.  In this lawsuit, Murphy seeks specific performance of the original settlement agreement and also claims that the Postal Service retaliated against him.  The Postal Service has moved for summary judgment.  For the reasons described herein, I grant the Postal Service's motion for summary judgment.

#### I.    BACKGROUND

A.    **1993 EEO Complaint and Settlement**

During a 1992 restructuring of the Postal Service, Murphy wanted to be promoted to a new District Manager position in Westchester, New York, but someone else was selected for that position instead.  On February 22, 1993, Murphy responded by filing an Equal Employment Opportunity ("EEO") complaint alleging that the Postal Service's decision not to promote him constituted discrimination against him on the basis of his race, color, religion, sex, and age.  On December 28, 1994, Paul Tartaglia (the Postal Service's manager of human resources) and Murphy executed a settlement agreement resolving Murphy's EEO complaint. Under the agreement, Murphy was to receive: a promotion to a District Manager position in Central New Jersey (items 1 - 4), specified relocation benefits (item 5), a salary increase retroactive to October 1993 (item 6), a lump sum payment of $16,000 "to reflect past relocation benefits inequities" (item 7), and payment of $10,000 to Murphy's representatives in the negotiation process (item 8).

From 1995 to 1998, Murphy made repeated, unsuccessful efforts to obtain final approval of the settlement from the

Postal Service.  On March 7, 1995, in an internal Postal Service
memo to one of his superiors, Mr. Tartaglia represented that he
and Murphy had recently discussed the "reluctance of Headquarters
to approve my agreement with him in settlement of his EEO Case."
(Murphy, for his part, asserts that no such discussion took
place.)

On April 12, 1995, Mr. Tartaglia sent a memo to Murphy
containing two proposed amendments to the original agreement,
both of which related to the retroactive salary increase in item
6.  Murphy responded by proposing his own revisions to Mr.
Tartaglia on June 12, 1995.  On November 20, 1995, having
received no reply to the proposed revisions, Murphy sent, through
counsel, a letter to Mr. Tartaglia inquiring about the status of
the matter.  On July 24, 1996, Murphy sent, through counsel,
another set of proposed revisions to Mr. Tartaglia.

On August 17, 1997, Murphy sent a brief memo directly to Mr.
Tartaglia that "attempted to update and summarize the subject
agreement for potential closure."  He stated that although items
1 through 4 (relating to his transfer to a new District Manager
position in New Jersey) had been implemented and some were
"moot," item 6 was "[n]ever implemented," item 7 was "never

effected," and item 8 was "still an outstanding issue."

On September 7, 1998, Murphy communicated to his attorney that no progress had been made regarding the unfulfilled terms of the agreement, and that "unless reasonable action is effected, in say 90 days, we should re-file and also file a reprisal."[1]  There is, however, no evidence in the record suggesting that Murphy or his attorney did anything to follow up on this sentiment.

From 1998 to 2000, there do not appear to have been any communications exchanged between the parties regarding Murphy's case other than Murphy's receipt of two payments: $16,000 in May of 2000 in satisfaction of term 7 of the agreement, and a $12,000 payment to Murphy's attorney on an unspecified date in satisfaction of term 8 of the agreement.

For the next four years, from May 2000 to December 2004, there is no indication in the record that either Murphy or the Postal Service communicated further regarding the settlement agreement.

---

[1] As he explained in the letter, Murphy's phrase "to file a reprisal" meant that he intended to file a complaint alleging that "Nancy George's action denying me the 1995, 5% merit/bonus" constituted retaliation against him for alleging discrimination.

**B.      2004 EEO Complaint Seeking to Enforce 1994 Settlement**

In 2004, Murphy was assigned to serve as a postal advisor to
the Coalition Provisional Authority in Iraq.  On December 15 of
that year, apparently after his return from Iraq, Murphy
announced his retirement from the Postal Service.
Simultaneously, Murphy filed a complaint with the EEO Compliance
and Appeals Manager alleging that the Postal Service had breached
the December 1994 settlement agreement.

Meanwhile, in January 2005, Murphy attempted to revive the
negotiations over amending the settlement agreement (by then over
a decade old) via e-mail.  In reply, the Postal Service stated
its willingness to "implement the agreement you signed on
December 25, 1994."  The Postal Service also asserted that it had
"already complied with several points in this agreement."

On July 18, 2005, the Postal Service denied Murphy's 2004
EEO claim on the ground of untimeliness, stating that Murphy
"knew or should have known of the agency's alleged noncompliance
but instead waited until your imminent retirement to allege
breach of settlement."

Murphy appealed that decision to the Equal Employment
Opportunity Commission (EEOC).  On August 21, 2006, the EEOC

denied his appeal.  The EEOC found that Murphy's allegation of breach was untimely and that his claim was barred by laches because of his failure to act with due diligence in pursuing his claim.

**C.   2005 EEO Complaint with Retaliation and Other Claims**

On July 23, 2005 (four days after the Postal Service's denial of his 2004 EEO complaint), Murphy filed a second EEO complaint alleging religious discrimination, age discrimination, and retaliation for his 1993 EEO claim.

On September 2, 2005, the Postal Service denied Murphy's second EEO complaint because his claims were both untimely and barred by laches.

Murphy appealed that decision to the EEOC.  On January 23, 2007, the EEOC denied his appeal because his claims were untimely, barred by laches, or reflected nothing more than dissatisfaction with the processing of a previously-filed complaint.

On March 22, 2007, the EEOC denied reconsideration of its decision.

**D.   The Instant Suit**

On May 15, 2007, Murphy filed a pro se complaint in this

court, seeking specific performance of the 1994 settlement

agreement, or unspecified equitable remedies "that would produce

a similar result."  Additionally, Murphy seeks relief for various

retaliation claims spanning the twelve-year period from the

filing of his original EEO complaint in 1993 to his retirement

announcement in 2005.

## II.   STANDARD OF REVIEW

The Postal Service has filed a Motion to Dismiss And/Or For

Summary Judgment, which I treat as a motion for summary judgment.

Summary judgment is appropriate when "the pleadings, the

discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  A party seeking summary judgment must

first identify the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the

moving party has properly supported her motion for summary

judgment, the burden shifts to the nonmoving party, with respect

to each issue on which he has the burden of proof, to demonstrate

that a trier of fact reasonably could find in his favor.

DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997); see

Celotex, 477 U.S. at 323.  "At this stage, the nonmoving party

'may not rest upon mere allegation or denials of [the movant's]

pleading, but must set forth specific facts showing that there is

a genuine issue' of material fact as to each issue upon which he

would bear the ultimate burden of proof at trial."  DeNovellis,

124 F.3d at 306 (quoting Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986)).  The test is whether there is "sufficient

evidence favoring the nonmoving party for a jury to return a

verdict for that party.  If the evidence is merely colorable or

is not significantly probative, summary judgment may be granted."

Id. (quoting Anderson, 477 U.S. at 249-50).


### III.  **ANALYSIS**

Murphy seeks specific performance of the 1994 settlement

agreement and, separately, seeks relief for actions that the

Postal Service allegedly took in retaliation for his

discrimination claims.  I discuss these two claims in turn.

### A.  **Specific Performance of 1994 Settlement Agreement**

Murphy's claims arise under Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. I assume without deciding that Murphy may file an action in federal district court to enforce a breached Title VII/ADEA settlement agreement, rather than relying exclusively on administrative remedies.  See Owens v. West, 182 F. Supp. 2d 180, 188 (D. Mass. 2001) ("Title VII's emphasis on voluntary compliance would be compromised if federal courts were found to lack jurisdiction to enforce agreements of this sort").  Even so, Murphy's failure to meet relevant administrative deadlines bars his action for specific performance.  Murphy missed two deadlines, either one of which can independently justify dismissal: (1) his 2004 EEO complaint missed, by several years, the thirty-day deadline for complaining of a breached settlement agreement; and (2) his 2007 complaint in this court missed, by several months, the ninety-day deadline for appealing the August 21, 2006, denial of his 2004 EEO complaint.

### 1.    Failure to Timely File 2004 EEO Complaint

If, after reaching a settlement agreement of his Title VII or ADEA claims, a federal employee believes that the employing agency has breached that agreement, he must follow the procedure set out in 29 C.F.R. § 1614.504:

> If the complainant believes that the agency has failed
> to comply with the terms of a settlement agreement or
> decision, the complainant shall notify the EEO
> Director, in writing, of the alleged noncompliance
> within 30 days of when the complainant knew or should
> have known of the alleged noncompliance.  The
> complainant may request that the terms of settlement
> agreement be specifically implemented or,
> alternatively, that the complaint be reinstated for
> further processing from the point processing ceased.

29 C.F.R. § 1614.504(a).

Murphy failed to comply with this requirement, missing the

deadline not by days or months, but by years.  As early as 1995,

Murphy clearly knew that the Postal Service was reluctant to

comply with the agreed-upon terms of the settlement, as evidenced

by his decision to retain counsel and the conduct of counsel

(including a November 20, 1995, letter to Paul Tartaglia

expressing doubt about whether "the original settlement is still

in effect").  Additionally, Murphy's August 17, 1997, letter to

his attorney specifically noted that the retroactive salary

increase was "never implemented," the $16,000 lump sum payment

was "never effected," and the payment to his attorney was "still

an outstanding issue."  In other words, he was aware that the

Postal Service had only partially performed its end of the

bargain.  Indeed, by September 7, 1998, Murphy was frustrated

enough that he suggested that if no progress was made in the next

-10-

ninety days, he intended to "re-file and also file a reprisal."
This shows that Murphy was not only aware of the Postal Service's
noncompliance, but felt that it was serious enough to justify a
further EEO complaint.  It could be argued that the statute of
limitations began running at this point.  Even assuming that it
did not, however, Murphy's inaction from 2000 to 2004
extinguished whatever rights remained.

By May of 2000, the Postal Service had given Murphy the
$16,000 lump sum payment and paid $12,000 to Murphy's attorney.
All that remained to be implemented was the retroactive salary
increase.  Yet the Postal Service did not perform this final
term, and Murphy neither insisted that they perform nor did he
file any EEO complaints of noncompliance.

It was not until four years of silence and continued non-
performance had elapsed that Murphy chose, on December 15, 2004,
to alert the EEO officer to the Postal Service's noncompliance.
Thus, even giving Murphy the benefit of all reasonable inferences
in his favor, the thirty-day deadline set by 29 C.F.R. §
1614.504(a) had long since elapsed by the time Murphy filed his
2004 EEO complaint.

There is no basis in equity to excuse that delay.  The

Postal Service properly raised laches as a defense to Murphy's

2004 EEO complaint, both internally and before the EEOC.

Additionally, Murphy has offered no evidence suggesting that it

would be appropriate to equitably toll the running of the

deadline.  Accordingly, Murphy's unexplained failure to seek

specific performance of his settlement agreement for more than

four years extinguished his right to seek specific performance of

the alleged settlement agreement.

2.   **Lawsuit Not Filed Within Ninety Days of Final
     Administrative Action**

Even if Murphy's multi-year delay in filing his 2004 EEO

complaint was excusable, his present effort to compel specific

performance would still fail because Murphy missed the deadline

for challenging the EEOC's final rejection of his 2004 EEO

complaint.  Under 42 U.S.C. § 2000-e16(c), an aggrieved federal

employee may file a civil action "[w]ithin 90 days of receipt of

notice of final action taken by . . . the Equal Employment

Opportunity Commission."  This ninety-day statute of limitations

applies equally to Title VII claims and ADEA claims, if -- as

here -- the ADEA claims were first raised in an administrative

proceeding.  See Rossiter v. Potter, 357 F.3d 26, 30 (1st Cir.

2004); Lavery v. Marsh, 918 F.2d 1022, 1028 (1st Cir. 1990).  In

Murphy's case, the ninety-day statute of limitations began

running when he received the EEOC's August 21, 2006, rejection of

his 2004 EEO complaint.  Accordingly, he had until November 19,

2006, plus the time necessary for service by mail of the EEOC

decision, to file the instant lawsuit in federal district court.

See Hill v. Textron Auto Interiors, Inc., 160 F. Supp. 2d 179,

183 (D.N.H. 2001) ("In the absence of evidence to the contrary,

courts will presume that a plaintiff received his or her

right-to-sue letter three days after the EEOC mailed it").

Instead, however, Murphy waited until May 15, 2007, to do so.

That filing was about six months too late.

        The fact that Murphy included some of the same claims in his

subsequent 2005 EEO complaint, which did not reach a final

resolution until March 2007, did not toll the running of this

statute of limitations.  Brown v. Unified Sch. Dist. 501, 465

F.3d 1184, 1186 (10th Cir. 2006) ("If the claimant fails to file

suit within the ninety-day window, the lapsed claims are not

revived by including them in a second EEOC charge and restarting

the process"); Spears v. Mo. Dep't of Corr. & Human Res., 210

F.3d 850, 853 (8th Cir. 2000); Soso Liang Lo v. Pan American

World Airways, Inc., 787 F.2d 827, 828 (2d Cir. 1986) ("We hold
that whether the present action is time barred must be determined
with reference to only the first Notice of Right to Sue.
Otherwise, the time limitations . . . would be meaningless,
because potential Title VII plaintiffs could evade those
requirements simply by seeking additional Notices of Right to Sue
whenever they pleased.").

Murphy argues that the "ongoing" nature of the prior
settlement negotiations tolled the statute of limitations.  This
argument is meritless.  First, occasional disputes over the
performance of a settlement whose terms were agreed upon some
twelve years earlier cannot fairly be characterized as ongoing
settlement negotiations.[2]  Second, even if I accepted, arguendo,
Murphy's contention that the settlement negotiations were in some
sense ongoing, that does not give rise to the kind of grave
injustice that would justify equitable tolling.  See Chico-Velez
v. Roche Prods., Inc., 139 F.3d 56, 59 (1st Cir. 1998)
("[E]quitable tolling is reserved for exceptional cases and the
record before us simply lacks the ingredients necessary to

_____

    [2] Indeed, the record contains no suggestion that the Postal
Service was even discussing the topic with Murphy between August
21, 2006, and May 15, 2007.

warrant invocation of the doctrine").

Accordingly, Murphy failed to meet the ninety-day deadline for challenging the EEOC's August 21, 2006, decision in federal district court, and the complaint must be dismissed.

## B.   **Murphy's Allegations of Retaliation**

In his 2005 EEO complaint, Murphy alleged that he suffered retaliation for his prior religious discrimination and age discrimination claims from August 1994 to August 2004.[3]  I analyze these allegations first as allegations of retaliation for claiming religious discrimination (Title VII) and next as allegations of retaliation for claiming age discrimination (ADEA).

---

[3] In his administrative proceedings and in his complaint in this court, Murphy alleges that he was retaliated against in that he: (1) did not receive settlement funds, including the $16,000 he received in May 2000, in a timely manner; (2) did not receive a merit award in 1994; (3) received a Northeast Area Economic Value Added ("EVA") award instead of a New York Metro Area EVA award in 1995; (4) did not receive a proper pay increase when promoted to the position of Manager, Operation Support, in 1997; (5) experienced a breach of privacy by an EEO counselor in 1995; and (6) received a reduced incentive payment for his postal position in Iraq in August 2004.  Additionally, Murphy's complaint adds a new allegation that, on an unspecified date, the Deputy Postmaster General engaged in retaliation by reviewing Murphy's travel expenses.

1.    **Title VII Retaliation Claims**

To the extent that Murphy asserts Title VII retaliation

claims, his claims are barred by his failure to seek timely EEO

counseling.

EEOC regulations require an aggrieved person to "initiate

contact with a[n] [EEO] Counselor within 45 days of the date of

the matter alleged to be discriminatory or, in the case of

personnel action, within 45 days of the effective date of the

action."   29 C.F.R. § 1614.105(a)(1).   According to the record

before me, Murphy did not seek EEO counseling until December 15,

2004, which was not within forty-five days of any of the

retaliatory acts he alleged in his 2005 EEO complaint.   As for

Murphy's new and undated allegation that the Deputy Postmaster

General engaged in retaliation by reviewing Murphy's travel

expenses, there is no evidence that he ever sought EEO counseling

regarding this issue.

Thus, as to both his new and old allegations of retaliation,

Murphy has failed to show that he sought EEO counseling within

the requisite forty-five days.   Additionally, there is no basis

for equitable tolling of the forty-five-day deadline.   Murphy

blames at least some of his tardiness on "Tartaglia postal

related" delays, but this allegation is so vague and undeveloped that it cannot justify any tolling. See, e.g., Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 279 (1st Cir. 1999) (denying equitable tolling where the employee "has advanced no developed argumentation in support of her claim" and "her complaint does not allege any facts that remotely suggest a plausible basis for such relief").

Accordingly, to the extent that Murphy asserts he was retaliated against in violation of Title VII, his failure to meet the relevant deadlines forces the dismissal of those claims.

## 2.   **ADEA Retaliation Claims**

Murphy's ADEA retaliation claims are defective because (1) there is no retaliation cause of action under the ADEA, and (2) even if a retaliation cause of action did exist, it would be time-barred. Under First Circuit case law, the ADEA does not provide a cause of action for retaliation by federal employers. Gomez-Perez v. Potter, 476 F.3d 54, 60 (1st Cir. 2007) ("Congress did not intend for 29 U.S.C. § 633a to include a cause of action for retaliation as the result of having filed an age-discrimination related complaint"), cert. granted, 128 S. Ct. 29 (U.S. Sept. 25, 2007). Even if such a cause of action did exist,

however, it would be barred by Murphy's failure to timely seek EEO counseling or to file notice of his intent to sue within 180 days of the alleged acts of retaliation.

As to EEO counseling, Murphy's ADEA retaliation claims are governed by the same deadlines as his Title VII retaliation claims. Lavery, 918 F.2d at 1027. His ADEA retaliation claims are thus time-barred for the same reasons as his Title VII retaliation claims, discussed earlier.

A federal employee claiming age discrimination has the additional option, not available to Title VII claimants, of bypassing the administrative process and filing suit directly in federal court. Jorge v. Rumsfeld, 404 F.3d 556, 561 (1st Cir. 2005). By statute, however, a federal employee who wishes to avail himself of this bypass option must notify the EEOC of his intent to sue within 180 days following the occurrence of the allegedly unlawful practice. Id. at 561; see 29 U.S.C. § 633a(d). In this case, Murphy never filed a notice of intent to sue. Thus, he did not fulfill the requirements for exercising the bypass option.

Accordingly, to the extent that Murphy asserts he was retaliated against for alleging age discrimination, the statute

-18-

offers no remedy; alternatively, his failure to meet the relevant

deadlines forces the dismissal of those claims.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary

Judgment (Doc. No. 8) is granted.   The clerk is directed to enter

judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

February 25, 2008

cc:   Raymond T. Murphy, pro se
     Seth R. Aframe, Esq.